# 16-2737

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆◆

IN RE: LEHMAN BROTHERS HOLDINGS INC.,
and LEHMAN BROTHERS INC.,

*Debtors,*

1EE LLC,

*Plaintiff-Appellant,*

—against—

JAMES W. GIDDENS, as Trustee for
the SIPA Liquidation of Lehman Brothers Inc.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE JAMES W. GIDDENS, AS TRUSTEE
## FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.

JAMES C. FITZPATRICK
JAMES B. KOBAK, JR.
GREGORY C. FARRELL
KAREN M. CHAU
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Appellee
James W. Giddens, as Trustee
for the SIPA Liquidation of
Lehman Brothers Inc.*

## CORPORATE DISCLOSURE STATEMENT

Appellee James W. Giddens is acting in his capacity as trustee for the

liquidation of the business of Lehman Brothers Inc. under the Securities Investor

Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq*.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................1

COUNTER-STATEMENT OF THE ISSUES PRESENTED ..................................3

COUNTER-STATEMENT OF THE CASE ............................................................3

I.   Barclays Agreed to Offer Employment and Pay Bonuses
     to LBI's Employees in the Asset Purchase Agreement....................................3

II.  Mr. Hoffman Joined Barclays and Was Paid His Entire LBI Bonus. .............5

     A.   Mr. Hoffman Negotiated with Barclays
          for the Payment of His LBI Bonus........................................................6

     B.   Barclays Paid Mr. Hoffman His $83 Million LBI
          Bonus Plus $100 Million More for His Trading at Barclays. .............11

III. Mr. Judkins Joined Barclays and Was Paid His Entire LBI Bonus. .............14

IV.  The Proceedings and Decisions Below. ........................................................15

     A.   The Bankruptcy Court Decision............................................................16

     B.   The District Court Decision. ................................................................17

SUMMARY OF THE ARGUMENT ........................................................................19

STANDARD OF REVIEW ....................................................................................21

ARGUMENT ......................................................................................................22

I.   The District Court Correctly Ruled that Appellants
     Are Not Entitled to Be Paid Their Bonuses Twice. ......................................22

     A.   The Bankruptcy Court's Finding that Barclays Paid Mr.
          Hoffman His $83 Million LBI Bonus Is Well Supported by the
          Record..................................................................................................22

     B.   The Bankruptcy Court's Finding that Barclays Paid Mr. Judkins
          His $800,000 LBI Bonus Is Well Supported by the Record...............26

# TABLE OF CONTENTS
(Continued)

**Page**

C.     The Law Does Not Entitle Contractual Obligees to Double Performance of the Same Obligation. ...............................28

D.     Mr. Hoffman and Mr. Judkins' Various Other Arguments for a Double Recovery Are Baseless...............................33

    1.     The parol evidence rule does not apply to this case. ...............33

    2.     The lack of an assumption and assignment of the employment contracts is irrelevant...............................36

    3.     Barclays' $83 million bonus payment was not materially different from LBI's $83 million bonus obligation. ................39

    4.     Mr. Hoffman's arguments that LBI did not delegate bonus obligations to Barclays are irrelevant and incorrect. ...................................................................39

    5.     The Bankruptcy Court was correct in rejecting Mr. Hoffman's judicial estoppel argument..............................41

II.     LBI's Written Bonus Policy Precludes Mr. Judkins' Claim for a Discretionary Bonus Based on an Alleged Oral Promise. ...................45

CONCLUSION ..................................................46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Ackerman v. Price Waterhouse*,
   683 N.Y.S.2d 179 (App. Div. 1998)....................................................29

*Adams v. Jersey Cent. Power & Light Co.*,
   21 N.J. 8 (1956) ...............................................................................33

*Adler v. Pataki*,
   185 F.3d 35 (2d Cir. 1999) ...............................................................43

*Beck v. Mfrs. Hanover Trust Co.*,
   481 N.Y.S.2d 211 (Sup. Ct. 1984)....................................................37

*Chapin v. Fairchild Camera & Instr. Corp.*,
   107 Cal. Rptr. 111 (Ct. App. 1973) ..................................................33

*Charron v. Sallyport Glob. Holdings, Inc.*,
   640 Fed. App'x 80 (2d Cir. 2016) .....................................................34

*In re Ciena Capital*,
   440 B.R. 47 (S.D.N.Y. 2010) ...........................................................21

*Cifra v. Gen. Elec. Co.*,
   252 F.3d 205 (2d Cir. 2001) ........................................................22,43

*Contemporary Mission, Inc. v. Famous Music Corp.*,
   557 F.2d 918 (2d Cir. 1977) ...................................................28,37,39

*Coreth v. Barclays Capital Inc.*,
   479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75
   (2d Cir. 2013)...........................................................................25,36

*In re Coudert Bros.*,
   487 B.R. 375 (S.D.N.Y. 2013) .........................................................35

*Delaney v. Bank of Am. Corp.*,
   908 F. Supp. 2d 498 (S.D.N.Y. 2012), *aff'd*, 766 F.3d 163
   (2d Cir. 2014)..................................................................................45

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*DeRosa v. Nat'l Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010) ................................................................44

*DiBart v. Erhal Holding Corp.*,
  401 N.Y.S.2d 279 (App. Div. 1978)..................................................30

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
  No. 10 Civ. 142 (MHD), 2013 WL 709048
  (S.D.N.Y. Feb. 26, 2013).................................................................43

*GAMCO Investors, Inc. v. Vivendi Universal, S.A.*,
  838 F.3d 214 (2d Cir. 2016) ............................................................22

*Hall v. United Parcel Serv. of Am., Inc.*,
  76 N.Y.2d 27 (1990) ........................................................................45

*Haralson v. E.F. Hutton Grp., Inc.*,
  919 F.2d 1014 (5th Cir. 1990), *overruled on other grounds as
  recognized in Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) ...........30

*Headrick v. Rockwell Int'l Corp.*
  24 F.3d 1272 (10th Cir. 1994) .........................................................28

*Holland v. Fahnestock & Co.*,
  210 F.R.D. 487 (S.D.N.Y. 2002) .....................................................28

*Hunter v. Deutsche Bank AG, N.Y. Branch*,
  866 N.Y.S.2d 670 (App. Div. 2008)..................................................45

*Lamb v. Emhart Corp.*,
  47 F.3d 551 (2d. Cir. 1995) .............................................................31

*In re Lehman Bros. Holdings Inc.*,
  456 B.R. 213 (Bankr. S.D.N.Y. 2011)..............................................44

*Mathias v. Jacobs*,
  238 F. Supp. 2d 556 (S.D.N.Y. 2002) ..........................................30,40

*In re MPF Holding U.S. LLC*,
  No. 08-36084, 2013 WL 3197658 (S.D. Tex. Jun. 21, 2013) ...........38

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................42,43

*O'Rourke v. United States*,
    587 F.3d 537 (2d Cir. 2009) ...........................................21

*Oxford Commercial Corp. v. Landau*,
    190 N.E.2d 230 (1963) ...................................................34

*Palmieri v. Allstate Ins. Co.*,
    445 F.3d 179 (2d Cir. 2006) ...........................................35

*Scherer v. Kane*,
    284 F. App'x 850 (2d Cir. 2008) .....................................33

*Shipsview Corp. v. Beeche Systems Corp.*,
    125 F.3d 844 (2d Cir. 1997) ...........................................31

*SIN, Inc. v. Dep't of Fin. of City of N.Y.*,
    513 N.Y.S.2d 430 (App. Div. 1987), *aff'd*, 523 N.E.2d 811 (1988) .................33

*Tierney v. Capricorn Investors, L.P.*,
    592 N.Y.S.2d 700 (App. Div. 1993)................................45

*Topps Co. v. Cadbury Stani S.A.I.C.*,
    526 F.3d 63 (2d Cir. 2008) .............................................34

*Travelers Cas. & Sur. Co. of Am. v. Trataros Constr., Inc.*,
    819 N.Y.S.2d 852 (Sup. Ct. 2006).................................34

*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005) ...........................................42

*Viacom International Inc. v. Tandem Products Inc.*,
    526 F.2d 593 (2d Cir. 1975) ...........................................37

*Vinciguerra v. New York*,
    326 N.Y.S.2d 293 (App. Div. 1971)...............................34

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Statutes and Rules**

11 U.S.C. § 365 ................................................................. 38

**Treatises and Periodical Materials**

22A N.Y. Jur. Contracts § 475 ....................................... 38

29 Williston on Contracts § 74:27 ................................ 39

Corbin on Contracts § 70.6 ........................................... 32

Restatement (Second) of Contracts § 278 ................. 31,40

Restatement (Second) of Contracts § 316 ................. 37

Restatement (Second) of Contracts § 318 ................. 29, 38

Appellee James W. Giddens (the "Trustee"), as Trustee for the liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel, respectfully submits this brief in opposition to the appeals filed by Appellants 1EE LLC (as assignee of Jonathan Hoffman) and Wayne Judkins.

## PRELIMINARY STATEMENT

This case involves the claims of two former LBI traders for the bonuses that LBI owed them when it went into liquidation in 2008. The District Court correctly held that the claims should be denied because those bonuses were paid by Appellants' subsequent employer, Barclays Capital Inc. ("Barclays"). Put simply, parties to a contract are entitled to one performance, not two.

The first appellant, Mr. Hoffman, was owed an $83 million bonus from LBI at the time of the liquidation. There is no dispute that shortly after the liquidation Mr. Hoffman began work with Barclays, and his Barclays agreement provided that, in addition to set percentages of his net profits, he would be paid fixed amounts totaling $70 million plus an elevated percentage of profits capped at $13 million—for a total of $83 million. Barclays paid Mr. Hoffman that $83 million (plus more than $100 million more for the profits he made at Barclays). The Bankruptcy Court found as a factual matter—after a multi-day trial and with the benefit of

contemporaneous audio-recordings of negotiations made by Mr. Hoffman—that the $83 million that Barclays paid to Mr. Hoffman was his LBI bonus.

The second appellant, Mr. Judkins, was owed an $800,000 guaranteed bonus from LBI at the time of the liquidation. He too went to Barclays, and his Barclays agreement provided that he would be paid an $800,000 bonus. The Bankruptcy Court found as a factual matter that this $800,000 was Mr. Judkins' 2008 LBI bonus. Mr. Judkins also claimed a discretionary bonus of an unspecified amount based on an oral promise, but both lower courts held that this claim was precluded by LBI's written bonus policy.

These factual findings—which are well-supported by the record—foreclose Appellants' claims. As the District Court correctly held, an "obligee, as a matter of law and equity, is not entitled to double performance on the same contract."

The Appellants' arguments for reversal focus largely on legal doctrines that do not apply to this case. For example, they point to the parol evidence rule and the fact that their Barclays agreements do not state explicitly that the bonus payments are designed to satisfy LBI's obligations. But neither the Trustee nor LBI was a party to those agreements, so the parol evidence rule does not apply. And, in any event, the Trustee is not seeking to alter the terms of the Barclays agreements. Similarly, Appellants refer to doctrines of accord and satisfaction and

third-party beneficiaries, neither of which was the basis for the decisions below nor are they relevant to deciding this case.

While many financial losses resulted from LBI's failure, Mr. Hoffman's and Mr. Judkins' guaranteed bonuses were certainly not among them. Neither law nor equity permits them to make claims into the LBI estate—at the expense of other creditors—for bonuses that they were already paid. The District Court decision should be affirmed.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED

Did the District Court correctly affirm the Bankruptcy Court's factual finding that Barclays' payments to the Appellants were in satisfaction of LBI's bonus obligations?

Did the District Court correctly conclude as a legal matter that an obligee is not entitled to be paid twice on the same legal obligation?

Did the District Court correctly affirm the Bankruptcy Court's holding that Mr. Judkins was not entitled to a discretionary bonus without a written agreement?

## COUNTER-STATEMENT OF THE CASE

### I. Barclays Agreed to Offer Employment and Pay Bonuses to LBI's Employees in the Asset Purchase Agreement.

On September 15, 2008, LBI's parent, Lehman Brothers Holdings Inc. ("LBHI"), filed for bankruptcy, jeopardizing the livelihoods of thousands of LBI

3

employees.  (A2590-91 [Bankr. Ct. Op. 6-7].).)[1]  The next day, LBHI, LBI, and

Barclays entered into the Asset Purchase Agreement ("APA"), by which Barclays

agreed to purchase most of the assets of LBI's North American capital markets and

investment banking businesses.  (A2591 [Bankr. Ct. Op. 7]; A2086-2132 [APA].)

As the Bankruptcy Court found, "[t]he APA addressed the uncertainty

confronting Lehman employees by incorporating Barclays' commitment to offer

employment to each LBI employee who worked in the acquired business and to

make certain payments to employees who accepted Barclays' offer."  (A2591

[Bankr. Ct. Op. 7].)  The APA referred to LBI employees who accepted an

employment offer from Barclays as "Transferred Employees."  (A2123 [APA §

9.1(a)].)

The Bankruptcy Court found that "[a] key component of Barclays'

obligations to these transferred employees was the payment of bonus compensation

on account of their prior employment by Lehman."  (A2585 [Bankr. Ct. Op. 1].)

Specifically, Section 9.1(c) of the APA provided for Barclays to "pay each

Transferred Employee an annual bonus . . . in respect of the 2008 Fiscal Year that,

in the aggregate, are equal in amount to 100 percent of the bonus pool amounts

accrued in respect of amounts payable for incentive compensation (but not base

---

1.    Citations to A___ are to the parties' Joint Appendix.

4

salary)."[2]  (A2124 [APA § 9.1(c)]; *see* A2591-92 [Bankr. Ct. Op. 7-8].)  As the

Bankruptcy Court found, "[t]his was Barclays' undertaking to pay Transferred

Employees bonus amounts owed to them by LBI."  (A2592 [Bankr. Ct. Op. 8].)

One week after LBHI's bankruptcy filing, on September 22, 2008, Barclays'

global head of human resources sent an email to former LBI employees offering

them the opportunity to join Barclays.  (A2594 [Bankr. Ct. Op. 10]; A2275-76.)

As discussed below, Mr. Judkins accepted this offer and Barclays paid him the

$800,000 guaranteed bonus that he was owed by LBI.  (A2660-62 [Bankr. Ct. Op.

76-78].)  Mr. Hoffman did not reply to the email offer of employment, but instead

commenced negotiations with Barclays to ensure that he would be paid the $83

million bonus that LBI owed him.  (A2604-5 [Bankr. Ct. Op. 20-21].)

## II.  Mr. Hoffman Joined Barclays and Was Paid His Entire LBI Bonus.

Mr. Hoffman was a proprietary trader for LBI from 1994 until LBI's failure

in 2008.  (A2598 [Bankr. Ct. Op. 14].)  Starting in 2001, the terms of Mr.

Hoffman's employment were governed by annual employment contracts.  (A2598

[Bankr. Ct. Op. 14].)

Mr. Hoffman's 2007 and 2008 employment contracts provided that he would

receive a $200,000 annual salary plus a bonus based on his trading performance.

---

2.  As Barclays' Michael Keegan explained, the "bonus pool" was "a liability
[Barclays] assumed from Lehman Brothers . . . . [Barclays] had undertakings to
pay that out to employees, based on that assumption."  (A1392 [Apr. 24 Tr.
108:8-17].)

(A2599 [Bankr. Ct. Op. 15]; A2192; A2198.)  The bonus was calculated as (i) 12 percent of his first $25 million in net profit, plus (ii) 14 percent of any net profit above $25 million, less (iii) his salary.  (A2599 [Bankr. Ct. Op. 15].)  The parties agree that LBI owed Mr. Hoffman approximately $83 million in bonus payments pursuant to the terms of those contracts.

Of the $83 million, $75,539,600 is based on Mr. Hoffman's net profits in 2008.  The remaining $7,712,500 is a portion of the bonus based on Mr. Hoffman's net profits in 2007, and would have been subject to a clawback if Mr. Hoffman had lost money during 2008 (which he did not).[3]  (A2600-1 [Bankr. Ct. Op. 16-17].)

### A.   Mr. Hoffman Negotiated with Barclays for the Payment of His LBI Bonus.

When LBI failed, Mr. Hoffman's primary concern was that he would not be paid his $83 million bonus.  (A2604 [Bankr. Ct. Op. 20]; A1184-85 [Apr. 23 Tr. 184:22-185:8].)  As a consequence, Mr. Hoffman entered into negotiations with Barclays, during which he made it "abundantly clear" that he wanted Barclays to pay him the $83 million that he was owed by LBI.  (A2604 [Bankr. Ct. Op. 20].)

As the Bankruptcy Court recounted, Michael Keegan, who was the Barclays executive principally responsible for negotiating with Mr. Hoffman, testified that

---

3.  Mr. Hoffman's 2007 and 2008 contracts provided for 75 percent of a given year's bonus to be paid in the first quarter of the year after it was earned, and the remaining 25 percent to be paid in the first quarter of the next year, provided that Mr. Hoffman's trading remained profitable.  (A2600-1 [Bankr. Ct. Op. 16-17].)

"Mr. Hoffman stressed that he wanted Barclays to pay him what he was owed by LBI and that 'in order for him to talk to us, we had to address that issue.'" (A2604-5 [Bankr. Ct. Op. 20-21] (quoting A1344 [Apr. 24 Tr. 60:3-17]).)  Mr. Hoffman conceded that he told Barclays he was "looking for $83 million to come to work here" because "it was no secret to them that I had lost $83 million." (A2605 [Bankr. Ct. Op. 21] (quoting A1079-80 [Apr. 23 Tr. 79:25-80:11]).)  As Mr. Keegan testified, Barclays checked and confirmed during the negotiations that Mr. Hoffman was owed $83 million based on his trading performance at LBI. (A1345 [Apr. 24 Tr. 61:1-13].)

The evidence about Mr. Hoffman's negotiations with Barclays available to the Bankruptcy and District Courts was particularly well-developed because Mr. Hoffman made audio-recordings of these negotiations (and discussions with others about them) without the knowledge or consent of the other participants.  (A2607 [Bankr. Ct. Op. 23].)[4]  As the Bankruptcy Court found and the District Court affirmed, Mr. Hoffman's recordings "leave no doubt that Mr. Hoffman was focused on Barclays agreeing to pay him the $83 million he was owed by LBI in

---

4. The reasons for these surreptitious recordings were unclear.  Mr. Hoffman testified that they were in lieu of taking notes "because he had never seen someone take notes in a work environment," but the Bankruptcy Court characterized that explanation as "dubious at best."  (A2607 [Bankr. Ct. Op. 23].)

addition to paying him separately for his trading performance at Barclays."
(A2607 [Bankr. Ct. Op. 23]; *see* A2684 [D. Ct. Op. 4].)

For example, in a recorded meeting with Barclays executive Rich Ricci on September 23, 2008, Mr. Hoffman emphasized that he had "legacy compensation issues that are substantial." (A2221; A2608 [Bankr. Ct. Op. 24].) Mr. Hoffman's "legacy compensation issues" referred to the $83 million that LBI owed him. (A2608 [Bankr. Ct. Op. 24]; A1224-25 [Apr. 23 Tr. 224:24-225:3].) Similarly, as Mr. Hoffman explained that same day in a recorded conversation with a former LBI colleague:

> *We could talk about Lehman all day, Barclays has money. You've got to try to get money from Barclays through the negotiation* or they may feel in the back of their minds, we're not in the clear with this guy, although we'll say we are. . . . *They'll have legacy issues with something at Lehman.* . . . So they may feel like, well, we'll offer him a good deal, because it will satisfy any potential down the road that, you know, he tries to *make it a legacy issue about what he's owed before.* All that does is make it hard for me to, you know, *if I wasn't owed any money, it would be easier.* I'll say what can you do for me, no thanks, I'm leaving.

(A2233 (emphasis added).) Mr. Hoffman admitted that the reference to what he was "owed" was to his $83 million LBI bonus. (A2608 [Bankr. Ct. Op. 24]; *see* A1217 [Apr. 23 Tr. 217:16-22].)

On September 26, Mr. Ricci sent Mr. Keegan an email asking if Mr. Keegan was committed to Mr. Hoffman's business going forward. (A2234.) Mr. Keegan

8

responded: "If we can work out the cy [current year] pay issue, yes." (A2608 [Bankr. Ct. Op. 24]; A2234.) The current year pay issue was the $83 million that Mr. Hoffman was owed by LBI. (A2608-9 [Bankr. Ct. Op. 24-25]; A1345-46 [Apr. 24 Tr. 61:24-62:12].)

On September 30, Mr. Keegan emailed Barclays executive Eric Bommensath and another Barclays executive "a proposal for compensating Mr. Hoffman for the $83 million he was owed by LBI." (A2609 [Bankr. Ct. Op. 25]; A2235.) Mr. Keegan's proposal was as follows:

> As discussed under his agreement with Leh J. Hoffman would [have] been owed a total of $83m for his year to date earnings . . . . My recommendation for Jon is we pay John $30m of his total bonus this year (25% in year BC vest stock) and defer an additional $40m for which vests prorata if Jon is still an employee in Feb 28, 2010 and 2011. Going forward his existing core deal would be restored (12% of first 25 of net revenues and 14% above 25m) with the elimination of the claw back. Additionally for the remainder of calendar 08 we would pay Jon at a rate of 25% of net revenues earned and realized by the bonus payment date in February of 09.

(A2235.) Mr. Keegan testified that his proposal "was structured to try to match the payouts that [Mr. Hoffman] would have received under the Lehman Brothers contract for the $83 million dollars [sic]." (A1381 [Apr. 24 Tr. 97:15-18]; *see* A2609 [Bankr. Ct. Op. 25].) As Mr. Keegan explained, the elevated 25 percent payout for 2008 in his recommendation was intended to allow Mr. Hoffman to

make up the difference between the $70 million in fixed payments Barclays was offering and his $83 million LBI bonus. (A1349 [Apr. 24 Tr. 65:4-17].)

On October 2, 2008, Mr. Hoffman again recorded discussions with Mr. Keegan and Mr. Bommensath concerning Barclays' proposal. (A2609 [Bankr. Ct. Op. 25].) As the Bankruptcy Court found, Mr. Keegan made clear during the meeting that "Barclays was attempting to structure its payout of the $83 million to match what [Mr. Hoffman] would have received from LBI" and "Mr. Hoffman acknowledged that Barclays had structured the deal to match the payments that he would have received from LBI." (A2610 [Bankr. Ct. Op. 26]; A2225; A2231.)

During the meeting, Mr. Hoffman asked Mr. Keegan "for more time to make 'the rest of the money that I seem to be out,' referring to the short time frame in Mr. Keegan's initial offer for him to make up the [$13 million] difference between the $83 million he was owed by LBI and the $70 million in fixed payments Barclays was offering." (A2609-10 [Bankr. Ct. Op. 25-6] (quoting A2225); *see* A1125-26 [Apr. 23 Tr. 125:21-126:1].) Barclays addressed Mr. Hoffman's concern "by extending the elevated payout period"—*i.e.*, the period during which Mr. Hoffman would receive a greater percentage of his profits than his 12/14 percent core deal—"to up to two years and capping the maximum amount Mr. Hoffman could earn under the elevated payout percentage at $13 million." (A2610 [Bankr. Ct. Op. 26] (citing A1350 [Apr. 24 Tr. 66:4-15].) Thus, this offer from

10

Barclays consisted of $70 million in fixed payments plus an elevated percentage of his net profits above his normal payout up to $13 million—for a total of $83 million.

In addition, during the meeting, Mr. Bommensath, who previously had told Mr. Hoffman that Barclays would not pay the $83 million that LBI owed him (A2606 [Bankr. Ct. Op. 22]; *see* A1245-46 [Apr. 23 Tr. 245:22-246:6]), "told Mr. Hoffman that he had 'evolved from the first thing [he] told [him].'" (A2610 [Bankr. Ct. Op. 26] (quoting A2229).) In contrast to his initial position, Mr. Bommensath now told Mr. Hoffman that "we tried to respect you. Not to have you have the pressure to try to remake it, you earned it Johnny. Okay? You earned it. All right? You earned that money, it's yours." (A2230; A2610 [Bankr. Ct. Op. 26].)

Thus, the Bankruptcy Court found and the District Court affirmed that the "evidentiary record is clear that Barclays ultimately agreed to pay Mr. Hoffman the $83 million he was owed by LBI." (A2611 [Bankr. Ct. Op. 27]; A2684 [D. Ct. Op. 4].)

### B. Barclays Paid Mr. Hoffman His $83 Million LBI Bonus Plus $100 Million More for His Trading at Barclays.

After Barclays agreed to pay Mr. Hoffman his $83 million LBI bonus, Mr. Hoffman and Barclays entered into an employment agreement on October 3, 2008. (A2611 [Bankr. Ct. Op. 27]; A2205-9.) The agreement stated that Mr. Hoffman's

start date at Barclays was September 22, 2008—the closing date of the LBI sale memorialized in the APA.  (A2205; A2611 [Bankr. Ct. Op. 27].)

As Mr. Hoffman had discussed with Barclays, the agreement essentially replicated his core deal with LBI.  (A2611-12 [Bankr. Ct Op. 27-28].)  Like his LBI contracts, Mr. Hoffman's agreement with Barclays provided that he would be paid a $200,000 salary, 12 percent of net profits up to $25 million, and 14 percent of net profits above $25 million.  (A2205, 2208; A2612 [Bankr. Ct. Op. 28].)

The agreement also provided for him to be paid an additional $83 million. (A2612-13 [Bankr. Ct. Op. 28-29].)  First, the agreement provided that Mr. Hoffman would receive three "Special Awards" totaling $70 million—$30 million in February 2009, $20 million in February 2010, and $20 million in February 2011. (A2205; A2612 [Bankr. Ct. Op. 28].)[5]

In addition, Barclays addressed the $13 million difference between Mr. Hoffman's $83 million LBI bonus and the $70 million in Special Awards "by

---

5.  Barclays could reduce the 2010 and 2011 Special Awards by up to $10 million each if Mr. Hoffman lost money in 2009 and 2010, respectively.  (A2205; A2613 [Bankr. Ct. Op. 29].)  The Bankruptcy Court found that "[t]his provision was intended to replicate the 25% second installment/clawback feature of his LBI agreement, under which Mr. Hoffman could 'lose' $18.9 million based upon his future performance."  (A2613 [Bankr. Ct. Op. 29]; see A2199; A1350 [Apr. 24 Tr. 66:4-15].)  Similarly, if Mr. Hoffman resigned or was terminated for cause, he would not receive any Special Awards that had not yet been paid—"just as Mr. Hoffman's 2008 performance bonus under his LBI agreement would not be paid if he resigned or was terminated for cause." (A2613 [Bankr. Ct. Op. 29]; A2206; A2199-2200.)

12

providing for Mr. Hoffman to receive an increased performance percentage from the twelve/fourteen percent arrangement to 20 percent of net profits until Mr. Hoffman received the remaining $13 million of the $83 million." (A2613 [Bankr. Ct. Op. 29; *see* A1352-53 [Apr. 24 Tr. 68:5-69:16].) In other words, this increased percentage provided for Mr. Hoffman to receive $13 million more than he would have earned under his core deal with Barclays so that the total payments would equal the $83 million Mr. Hoffman was due from LBI. (A2613 [Bankr. Ct. Op. 29]; A1353 [Apr. 24 Tr. 69:10-16].)

This reading of the agreement is consistent with an internal report prepared by Barclays' global head of human resources on Mr. Hoffman's compensation. The report stated that Barclays:

> [a]ssumed Lehman Brothers' liability to [Mr. Hoffman] of $83m to be delivered in a combination of $70m of special awards payable over 3 years with appropriate performance conditions and an adjusted payout rate structure for 2009 to deliver up to but not more than the additional $13m provided he was profitable in his trading for 2009.

(A2236.) As Mr. Keegan testified, Barclays "stepped into Lehman's sho[es] with respect to the $83 million." (A1362-64 [Apr. 24 Tr. 78:14-80:8].)

As the Bankruptcy Court found, "[i]n all, Mr. Hoffman received $100 million in compensation for his trading performance at Barclays during 2008 to 2010, in addition to the $83 million in Special Awards and increased profit sharing

13

he received from Barclays on account of his LBI bonuses." (A2614 [Bankr. Ct. Op. 30].) Accordingly, Mr. Keegan was "surprised" to learn of Mr. Hoffman's claim against LBI because Mr. Hoffman "was due $83 million from Lehman and we paid it to him." (A2614 [Bankr. Ct. Op. 30]; A1381-82, 1384 [Apr. 24 Tr. 97:25-98:4, 100:15-17].)

### III.  Mr. Judkins Joined Barclays and Was Paid His Entire LBI Bonus.

Mr. Judkins joined LBI as a proprietary trader in January 2008. (A2621 [Bankr. Ct. Op. 37].) Mr. Judkins' LBI employment agreement provided for a base salary of $200,000, and a "minimum bonus in the amount of $800,000" for the 2008 performance year. (A2213; A2622 [Bankr. Ct. Op. 38].) In addition to his minimum bonus, "Mr. Judkins claims he was told that, if he performed well, he would receive additional bonus compensation" in an unspecified amount. (A2622 [Bankr. Ct. Op. 38].)

Mr. Judkins understood that any 2008 bonus in excess of $800,000 would have been determined at the discretion of LBI's management and that LBI could have decided to pay him only an $800,000 bonus no matter how well he performed during the year. (A2622-23 [Op. 38-39]; A977 [Apr. 22 Tr. 254:21-24]; A352 [Judkins Dep. Tr. 46:14-17].) LBI's written bonus policy was consistent with this understanding. It provided that "bonuses were 'not guaranteed unless otherwise

14

agreed upon in writing' and were 'determined at the full discretion of senior [Lehman] management.'"  (A2622 [Bankr. Ct. Op. 38] (quoting A2155).)

After the sale of LBI's businesses to Barclays pursuant to the APA, Mr. Judkins accepted Barclays' offer of employment.  (A2623 [Bankr. Ct. Op. 39]; A980 [Apr. 22 Tr. 257:11-16].)  Barclays and Mr. Judkins entered into an employment agreement "that provided for him to receive the same total compensation from Barclays as he would have received from LBI for 2008"—a $200,000 salary and an $800,000 bonus.  (A2623 [Bankr. Ct. Op. 39]; *see* A2217.)  Barclays paid Mr. Judkins his 2008 bonus of $800,000 in February 2009.  (A2624 [Bankr. Ct. Op. 40].)

## IV.    <u>The Proceedings and Decisions Below.</u>

Mr. Hoffman asserted a claim against the LBI estate seeking $83,998,440 for his 2007 and 2008 bonuses.  (A2238-64.)[6]

Mr. Judkins asserted a claim for between $2 million and $2.4 million for his 2008 guaranteed and discretionary bonuses.  (A2277-89.)[7]

---

6.   Mr. Hoffman also had a claim for certain equity awards for prior years but that portion of his claim is not a subject of this appeal.  (*See* A2636 [Bankr. Ct. Op. 52 n.247].)

7.   Mr. Judkins also asserted claims for $400,000 in relocation expenses in connection with his move from Maryland to New York (A2277-89) and an $840,000 home equity loan he took out on his Maryland home.  (A2663-64 [Bankr. Ct. Op. 79-80].)  The Bankruptcy Court disallowed these claims (A2662-64 [Bankr. Ct. Op. 78-80]), and they are not part of this appeal.

### A.      The Bankruptcy Court Decision.

After the Trustee objected to both claims, the parties engaged in discovery,

and the Bankruptcy Court held a trial from April 22 through April 24, 2015.

(A2589 [Bankr. Ct. Op. 5].)  The parties submitted post-trial briefing, and the

Bankruptcy Court heard closing arguments on July 21, 2015.  (A2589-90 [Bankr.

Ct. Op. 5-6].)

On October 8, 2015, the Bankruptcy Court issued its opinion.  The court

found that LBI delegated to Barclays its obligation to pay 2008 bonuses in the

APA.  (A2635-36 [Bankr. Ct. Op. 51-52].)  The court also found the evidentiary

record to be "clear" that Barclays paid Mr. Hoffman the $83 million he was owed

by LBI.  (A2611 [Bankr. Ct. Op. 27].)  Accordingly, the court disallowed Mr.

Hoffman's claim for his 2008 bonus.  (A2638-47 [Bankr. Ct. Op. 54-63].)

However, the Bankruptcy Court concluded that Mr. Hoffman's 2007 bonus was

outside the scope of the delegation to Barclays.  (A2600-1, 2637-38 [Bankr Ct. Op.

16-17, 53-54].)  Thus, the Bankruptcy Court allowed Mr. Hoffman's $7.7 million

claim for the 2007 bonus even though it was included in the $83 million that the

Court found Barclays paid on account of what LBI owed.  (A2637-38 [Bankr. Ct.

Op. 53-54].)

With respect to Mr. Judkins, the Bankruptcy Court disallowed his claim in

its entirety, finding that Barclays paid Mr. Judkins $800,000 in full satisfaction of

his 2008 guaranteed LBI bonus and that Mr. Judkins had no entitlement to a

discretionary bonus under the terms of LBI's written bonus policy.  (A2660-64

[Bankr. Ct. Op. 76-80].)

The Bankruptcy Court entered its order on October 23, 2015.  (A2672-74.)

On October 27 and November 2, 2015, respectively, Mr. Hoffman and Mr. Judkins

filed Amended Notices of Appeal to the District Court.  (A2675-77.)  On

November 6, 2016, the Trustee filed a Notice of Cross-Appeal.[8]  (A2678-80.)

### B.  <u>The District Court Decision.</u>

The District Court affirmed the Bankruptcy Court's factual findings that

Barclays paid in full the LBI bonuses that had been owed to Mr. Hoffman and Mr.

Judkins.  (A2686 [D. Ct. Op. 6].)  In doing so, the District Court noted that Mr.

Hoffman's argument that Barclays paid him the $83 million—coincidentally the

same exact amount he was owed by LBI—as a signing bonus or motivational tool

"strains credulity."  (A2690 [D. Ct. Op. 10].)  The District Court similarly found

that the record supports the Bankruptcy Court's conclusion that Barclays' payment

---

8. The issues in the Trustee's cross-appeal were (1) whether the Bankruptcy Court erred in allowing Mr. Hoffman's $7.7 million claim for his 2007 bonus, and (2) whether the Bankruptcy Court erred in not subordinating a portion of the claim of another LBI employee who was not paid in full by Barclays pursuant to section 510(b) of the Bankruptcy Code.  The Trustee's cross-appeal with respect to the other LBI employee was resolved before the parties submitted their briefs to the District Court.  The District Court did not address the subordination issue with respect to Appellants, as it found that their claims should be disallowed in full.  The subordination issue was therefore not a subject of Appellants' appeal, and we do not address it here.

to Mr. Judkins of his $800,000 guaranteed bonus satisfied LBI's obligation to him. (A2692 [D. Ct. Op. 12].)

The District Court also affirmed the Bankruptcy Court's conclusion that LBI delegated to Barclays through the APA LBI's responsibility to pay Mr. Hoffman and Mr. Judkins their 2008 bonuses. (A2686 [D. Ct. Op. 6].) The District Court agreed with the Bankruptcy Court that the portion of Mr. Hoffman's bonus that was calculated based on his 2007 net profits was not a part of the delegation. (A2686 [D. Ct. Op. 6].) But the court found that Mr. Hoffman nonetheless could not claim that part of his bonus from LBI, because it had already been paid by Barclays. (A2686 [D. Ct. Op. 6].) As the court stated, an "obligee, as a matter of law and equity, is not entitled to double performance on the same contract." (A2691 [D. Ct. Op. 11].)

Finally, the District Court affirmed the Bankruptcy Court's holding that Mr. Judkins could not recover any additional bonus based on an alleged oral promise. The Court found that LBI's bonus policy provides that bonuses are not guaranteed unless agreed upon in writing, and Mr. Judkins' written employment contract contemplated only the $800,000 guaranteed bonus. (A2693 [D. Ct. Op. 13].)

The District Court filed its orders with respect to Mr. Hoffman and Mr. Judkins on July 6, 2016, and August 8, 2016, respectively, and Mr. Hoffman and Mr. Judkins filed their respective Notices of Appeal on August 5, and August 9,

18

2016. (A2694-96; A2710-13.) On November 16, 2016, this Court entered an order (ECF Nos. 36, 46) directing that these appeals be heard in tandem and permitting the Trustee to file a single brief in response to both Appellants' briefs.

## SUMMARY OF THE ARGUMENT

Based on the substantial record developed at trial, including Mr. Hoffman's recordings of the negotiations, the Bankruptcy Court correctly found and the District Court correctly affirmed that Barclays paid Mr. Hoffman and Mr. Judkins the full amount of the bonuses they were owed by LBI. This finding is supported by substantial evidence and is not clearly erroneous. Mr. Hoffman insisted that Barclays pay him the $83 million he was owed by LBI as well as substantial compensation for his trading at Barclays, and Barclays agreed to and did meet his demands. Similarly, Mr. Judkins was a Transferred Employee who was owed an $800,000 bonus for 2008 by LBI and he received that exact amount from Barclays.

The evidence also showed that, as part of the sale documented in the APA, LBI obtained a contractual commitment from Barclays to offer employment to LBI's employees and to pay them bonuses for their work at LBI. As the District Court correctly held, while this delegation on its own did not extinguish LBI's liability, Barclays' performance—its payment in full of LBI's bonus obligations— means that Appellants cannot seek to be paid those bonuses again.

19

Appellants' efforts to get around these well-supported factual findings and accurate conclusions of law are without merit. First, they argue that the parol evidence rule prohibits consideration of the evidence, but the rule is inapplicable here because the Trustee is not a party to the Barclays employment agreements, the Trustee does not seek to vary the terms of those agreements, and the context in which Mr. Hoffman and Mr. Judkins joined and were paid by Barclays must be considered.

Second, Appellants incorrectly argue that they should be paid twice because their employment contracts were not assigned to and assumed by Barclays in the APA. But the lack of an assignment is irrelevant. Once Barclays fully paid the bonuses, LBI's obligation was satisfied.

Mr. Hoffman's other individual arguments are equally baseless. His assertion that the timing of his $83 million payment from Barclays was different than it would have been had he received it from LBI does not entitle him to be paid his bonus again. His arguments that he falls outside of the APA delegation are, in the Bankruptcy Court's words, "pure nonsense." And his judicial estoppel argument ignores the basic elements of that doctrine, none of which is satisfied in this case.

Finally, Mr. Judkins' claim based on an alleged oral, unspecified discretionary bonus on top of the $800,000 guaranteed bonus he was paid by

20

Barclays also fails, because LBI's bonus policy stated that such bonuses were discretionary unless committed to writing. And there is no New York law entitling Mr. Judkins to a bonus payment to which he had no contractual right.

Appellants' claims against the LBI estate—for bonuses they have already received—would come at the expense of other estate creditors. There is no basis for such an inequitable result. The District Court's decision should be affirmed in all respects.

## STANDARD OF REVIEW

On an appeal from a District Court's review of a Bankruptcy Court's decision, the Court of Appeals "conduct[s] an independent examination of the bankruptcy court's decision." *O'Rourke v. United States*, 587 F.3d 537, 540 (2d Cir. 2009). The Bankruptcy Court's factual findings are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *Id.*

"[T]he burden of demonstrating that the Bankruptcy Court's findings of fact are clearly erroneous rests squarely on the shoulders of the appellant." *In re Ciena Capital*, 440 B.R. 47, 52 (S.D.N.Y. 2010). "The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 213 (2d Cir. 2001) (internal quotation omitted).

21

## ARGUMENT

### I.     The District Court Correctly Ruled that Appellants Are Not Entitled to Be Paid Their Bonuses Twice.

The District Court was correct in denying the Appellants' bonus claims because (1) the Bankruptcy Court's factual findings that Barclays paid them already are well supported by the record and certainly not clearly erroneous, and (2) the law is that parties to contracts are not entitled to double performance. Appellants' arguments to the contrary are without merit.

### A.     The Bankruptcy Court's Finding that Barclays Paid Mr. Hoffman His $83 Million LBI Bonus Is Well Supported by the Record.

After a multi-day trial—and with the benefit of Mr. Hoffman's recordings of the relevant conversations—the Bankruptcy Court found "that the $83 million Barclays paid to Mr. Hoffman above and beyond the replication of his core LBI deal was intended to satisfy LBI's obligation to pay Mr. Hoffman his 2007 and 2008 bonus in respect of work performed by him while at LBI." (A2647 [Bankr. Ct. Op. 63].)  The record evidence supports this finding, and the District Court was correct to affirm it.  (A2686 [D. Ct. Op. 6]); *see GAMCO Investors, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 219 (2d Cir. 2016) (under "deferential standard of review," findings of fact are accepted "unless we have a definite and firm conviction that a mistake has been committed" (internal quotation omitted)).

Mr. Hoffman entered into negotiations with Barclays concerned about the $83 million bonus that LBI owed him.  (A1184-1185 [Apr. 23 Tr. 184:22-185:8];

A2604 [Bankr. Ct. Op. 20].)  Mr. Hoffman therefore developed a "negotiating strategy" of requiring Barclays to pay him the $83 million as a condition of joining Barclays.  (A1192 [Apr. 23 Tr. 192:19-21]; A2605 [Bankr. Ct. Op. 21].)  He explained to a former colleague that his strategy was "to try to get money from Barclays through the negotiation" because "[t]hey'll have legacy issues with something at Lehman."  (A2233; A2607-8 [Bankr. Ct. Op. 23-24].)  Consistent with this strategy, he told Barclays that it needed to deal with his "legacy compensation issues that are substantial" (*i.e.*, the $83 million he was owed by LBI).  (A1224-25 [Apr. 23 Tr. 224:24-225:3]; A2608 [Bankr. Ct. Op. 24].)

Mr. Hoffman's contemporaneous audio-recordings show that the $83 million LBI bonus and the form in which Barclays would pay it were the central subjects of his discussions with Barclays.  As Barclays' Michael Keegan testified, Mr. Hoffman made clear that "in order for him to talk to us, we had to address that issue;" Mr. Hoffman "was asking for us to make him whole for what he thought he was entitled to from Lehman Brothers, which we ultimately believed we did."  (A1344, 1402 [Apr. 24 Tr. 60:3-17, 118:5-7]; A2611 [Bankr. Ct. Op. 27].)  And the day before Mr. Hoffman accepted Barclays' offer, Mr. Bommensath told Mr. Hoffman that Barclays agreed to pay him the $83 million he was owed:  "*you earned it Johnny.  Okay?  You earned it.  All right?  You earned that money, it's yours*."  (A2230 (emphasis added); A2610 [Bankr. Ct. Op. 26].)

23

Mr. Hoffman does not confront this evidence in his brief, and none of the factual arguments that he does make supports a conclusion that the Bankruptcy Court's findings were clearly erroneous. For example, Mr. Hoffman argues that Barclays' $83 million payment was the result of a competitive bidding process and designed to "motivate" and "respect" him. (Hoffman Br. 35-39.) Whether or not it was a competitive bidding process is open to interpretation—no other employer even made Mr. Hoffman an offer, and the evidence shows that Barclays agreed to pay Mr. Hoffman the $83 million because that is what he was owed by LBI, not because it had to beat an imaginary $82 million offer from someone else. (A2606, A2646-47 [Bankr. Ct. Op. 22, 62-63].) In any event, whether or not Barclays was trying to "motivate" or "respect" Mr. Hoffman and whether or not he had interest from other employers does not matter. The relevant question is whether or not the $83 million that Barclays paid to Mr. Hoffman was meant to represent the $83 million bonus that Mr. Hoffman lost when LBI failed. The Bankruptcy and District Courts found that it was—from both Mr. Hoffman's and Barclays' perspective—and the evidence supports that finding.

Mr. Hoffman also misses the point when he argues that his Barclays and LBI agreements create separate and distinct obligations, and that the District Court erred by conflating them. (Hoffman Br. 29-33.) There was no such conflation. Mr. Hoffman's claim is based on the bonuses he was owed under his LBI

24

agreements.  Mr. Hoffman's agreement with Barclays was the means by which he and Barclays documented Barclays' agreement to pay him the $83 million "above and beyond the replication of his core LBI deal . . . to satisfy LBI's obligation to pay Mr. Hoffman his 2007 and 2008 bonus in respect of work performed by him while at LBI."  (A2647 [Bankr. Ct. Op. 63].)

Mr. Hoffman's reliance on *Coreth v. Barclays Capital Inc.*, which involved two former LBI employees whom Barclays terminated without paying bonuses or severance, is also misplaced.  479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75 (2d Cir. 2013).  The *Coreth* court held that the employees could not sue Barclays because it had not assumed their LBI contracts in the APA.  479 B.R. at 275-80, 278 n.3.  Thus *Coreth* stands only for the proposition that Mr. Hoffman could not have sued Barclays successfully to obtain his $83 million.  Fortunately for Mr. Hoffman, he did not have to—Barclays agreed to pay it to him voluntarily.

Finally, Mr. Hoffman argues that the District Court "improperly substituted its own biases by questioning the adequacy of the consideration in the Barclays Agreement."  (Hoffman Br. 38-39.)  Mr. Hoffman misses the point again.  The question is not whether Mr. Hoffman's performance at Barclays was worth the additional $83 million.  The question is whether Barclays paid Mr. Hoffman the $83 million to compensate him for the $83 million that LBI owed him for his 2007 and 2008 bonuses.  Based on the entire record, the Bankruptcy Court correctly

25

found that it did and the District Court correctly affirmed that finding.  (A2611 [Bankr. Ct. Op. 27]; A2690-91 [D. Ct. Op. 10-11].)  As Barclays' Michael Keegan testified, Mr. Hoffman "was due $83 million from Lehman and we paid it to him." (A1384 [Apr. 24 Tr. 100:16].)[9]

### B.  The Bankruptcy Court's Finding that Barclays Paid Mr. Judkins His $800,000 LBI Bonus Is Well Supported by the Record.

When LBI's liquidation began, LBI owed Mr. Judkins an $800,000 guaranteed bonus.  There is no dispute that Mr. Judkins accepted Barclays' employment offer and became a Transferred Employee pursuant to the APA.  (*See* A2280.)  As the Bankruptcy Court found, therefore, "LBI delegated to Barclays its obligation to pay Mr. Judkins' 2008 bonus."  (A2660 [Bankr. Ct. Op. 76].)  Mr. Judkins entered into an employment agreement with Barclays that provided for him to receive the same $800,000 bonus for 2008 that LBI owed him, and Barclays paid him that $800,000.  (A2660 [Bankr. Ct. Op. 76].)  Thus, the Bankruptcy Court found and the District Court affirmed that Mr. Judkins did not have a claim against

---

9.  Mr. Hoffman selectively cites to Mr. Keegan's testimony to imply misleadingly that Barclays was unaware that LBI owed Mr. Hoffman $83 million, stating that "Keegan . . . admitted[] he was not aware that Hoffman had a claim against LBI when he was negotiating with Hoffman."  (Hoffman Br. 37-38.)  The record, however, clearly supports the Bankruptcy Court's finding that Barclays was aware that Mr. Hoffman was owed $83 million from LBI; whether Barclays realized that Mr. Hoffman would have a claim against the LBI estate if he was not paid is irrelevant.  (A2604-5 [Bankr. Ct. Op. 20-21]; A1384-85 [Apr. 24 Tr. 100:21-101:13].)

LBI for a 2008 bonus because he was already paid.  (A2661-62 [Bankr. Ct. Op. 77-78]; A2692 [D. Ct. Op. 12].)

Once again, the Bankruptcy Court's factual findings are supported by the record and are not clearly erroneous.  It is not plausible that the reason that Barclays paid $800,000 and LBI owed $800,000 was mere coincidence.  This is doubly so because Barclays paid Mr. Judkins that bonus for 2008 despite the fact that he only worked at Barclays for three months of that year—as the Bankruptcy Court put it, "a full year's bonus for a quarter of a year's work."  (A2661 [Bankr. Ct. Op. 77].)  Thus, the only interpretation of that payment that makes sense is that Barclays was accepting the delegation of LBI's 2008 bonus obligation to Mr. Judkins.

The separation agreement that Mr. Judkins attempts to rely upon does not change this conclusion.  (Judkins Br. 17-18.)  Mr. Judkins signed this separation agreement with Barclays in October 2009, eight months after receiving his $800,000 bonus.  (A2083.)  The separation agreement recites that Mr. Judkins already received his cash bonus and includes handwritten notations that appear to describe the bonus as a "Barclays cash bonus" and state that "nothing in this release applies to claims you may have against Lehman Brothers Inc."  (A2081-83.)  These notations are not inconsistent with the Bankruptcy Court's findings.  Barclays did pay Mr. Judkins the $800,000 bonus for 2008, so the reference to a

27

"Barclays cash bonus" is correct and unsurprising. And the non-waiver language is irrelevant—the issue is not whether or not Mr. Judkins waived his claim against LBI through his Barclays separation agreement. The issue is whether or not Barclays paid Mr. Judkins his $800,000 LBI bonus for 2008, and the Bankruptcy and District Courts correctly found that it did.

### C. The Law Does Not Entitle Contractual Obligees to Double Performance of the Same Obligation.

Section 9.1(c) of the APA provided that Barclays would "pay each Transferred Employee an annual bonus . . . in respect of the 2008 Fiscal Year." (A2124.) As the courts below both found, this provision "evinces LBI's delegation of its obligations to pay Transferred Employees bonuses in respect of LBI's 2008 fiscal year" to Barclays. (A2687 [D. Ct. Op. 7]; *see also* A2635-36 [Bankr. Ct. Op. 51-52].)

While this delegation on its own did not extinguish LBI's liability to Appellants for their bonuses, the actual performance by Barclays (that is, the payment in full of their bonuses) did. *See, e.g.*, *Headrick v. Rockwell Int'l Corp*. 24 F.3d 1272, 1278 (10th Cir. 1994) ("if the delegate performs the duty, the duty is discharged, and obligor owes obligee nothing" (quotation omitted)); *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2d Cir. 1977) (performance by the delegate discharges the obligation); *Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 499 (S.D.N.Y. 2002) ("the obligee is entitled to only one

28

performance" (citation omitted)); *see also* Restatement (Second) of Contracts §

318, Illustration 1 (1981) (where "A owes B $100, and asks C to pay B[,]

[p]ayment or tender to B by C has the effect of payment or tender by A").[10]

Moreover, as the District Court correctly held, an "obligee, as a matter of

law and equity, is not entitled to double performance on the same contract."

(A2691 [D. Ct. Op. 11].)  Thus, the exact scope of the delegation in the APA—

including whether or not the portion of Mr. Hoffman's bonus that was calculated

based on his 2007 profits but payable only if he remained profitable in 2008 was

included in the delegation—does not matter.  The relevant question is whether or

not Barclays paid the Appellants their LBI bonuses in full.  The District Court

correctly concluded that, notwithstanding its finding that LBI did not delegate its

obligation to pay 2007 bonuses, Barclays' payment of Mr. Hoffman's $83 million

bonus "discharged LBI's entire liability to Hoffman—not just LBI's liability for

the portion of the bonus payment it had delegated to Barclays, but the second

---

10. The Trustee agrees with the Appellants that although their Barclays
    employment agreements are silent as to the governing law, New York law
    should govern because the agreements were negotiated in New York for work
    to be performed in New York.  (Hoffman Br. 33 fn.5; Judkins Br. 17 fn.1.)  For
    the same reasons, New York law should govern the Appellants' LBI
    employment agreements.  *See, e.g.*, *Ackerman v. Price Waterhouse*, 683
    N.Y.S.2d 179, 188 (App. Div. 1998).

installment of Hoffman's 2007 fiscal year payment as well."[11]  (A2692 [D. Ct. Op. 12]); *accord Mathias v. Jacobs*, 238 F. Supp. 2d 556, 571-72 (S.D.N.Y. 2002) (applying an unjust enrichment framework to reject a creditor's "bold proposition that he is entitled to accept the benefits of a substituted performance, refuse to discharge the liability and still insist on payment of the original obligation in full");[12] *Haralson v. E.F. Hutton Grp., Inc.*, 919 F.2d 1014, 1035 (5th Cir. 1990) (parent company's advance of funds to satisfy a trading account deficiency that an investor owed to its subsidiary extinguished the debt), *overruled on other grounds as recognized in Lewis v. Fresne*, 252 F.3d 352, 357 n.5 (5th Cir. 2001); *DiBart v. Erhal Holding Corp.*, 401 N.Y.S.2d 279 (App. Div. 1978) (mortgagee's acceptance of payment from second mortgagee discharged debt owed by mortgagor and

---

11. Mr. Hoffman at times appears to misunderstand the District Court's basis for denying his claim for the $7.7 million calculated based on his 2007 net profits and characterizes it as a reversal of the Bankruptcy Court's finding that Mr. Hoffman's 2007 bonus was outside the scope of the delegation in the APA. (*See, e.g.*, Hoffman Br. 8-9.)  In fact, the District Court agreed with the Bankruptcy Court's finding that LBI did not delegate to Barclays its obligation to pay Mr. Hoffman's 2007 bonus, but nonetheless concluded that Mr. Hoffman was not entitled to be paid the 2007 bonus a second time.  (A2691 [D. Ct. Op. 11].)

12. Appellants point out that in *Mathias* it was the primary obligor (rather than a third party) that provided the substituted performance.  (Hoffman Br. 61-62; Judkins Br. 28-29.)  But the *Mathias* court itself found this distinction irrelevant, stating that a creditor "is entitled to the benefit of only one full performance and one satisfaction of a contractual debt; he cannot collect twice to discharge the same obligation, whether payment is made by the promisor himself, *by a third person*, or by both."  238 F. Supp. 2d at 571-72 (emphasis added).

30

prevented foreclosure of mortgage); Restatement (Second) of Contracts § 278(2) (1981) ("If an obligee accepts in satisfaction of the obligor's duty a performance offered by a third person, the duty is discharged . . . .").

The Appellants' claims were not, as they argue, denied because of an accord and satisfaction defense. (Hoffman Br. 61; Judkins Br. 27.) That defense arises where full performance of the obligation has not been made and the parties enter into a new agreement to resolve an outstanding dispute. *See Shipsview Corp. v. Beeche Systems Corp.*, 125 F.3d 844 (2d Cir. 1997) ("In an accord and satisfaction, an obligor agrees to provide a performance different from that required, or allegedly required, of him by the contract, and the obligee agrees to accept the substituted performance in satisfaction of the obligor's existing duty."); *Lamb v. Emhart Corp.*, 47 F.3d 551, 561 (2d. Cir. 1995) (accord and satisfaction requires "that at the time of the agreement a good faith dispute existed over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim"). Here, as both lower courts found, there was *full* performance of LBI's bonus obligations by Barclays, and Appellants cannot seek an additional performance of the same obligation.

Moreover, Appellants' argument that they were not clearly informed that accepting full performance by Barclays would discharge LBI's obligation ignores the Bankruptcy Court's well-supported findings to the contrary. As the

31

Bankruptcy Court found and the District Court affirmed, Barclays' $83 million and

$800,000 payments to Mr. Hoffman and Mr. Judkins, respectively, were intended

to satisfy LBI's bonus obligations. (A2647 [Bankr. Ct. Op. 63] ("The Court finds

that the $83 million Barclays paid to Mr. Hoffman above and beyond the

replication of his core LBI deal was intended to satisfy LBI's obligation to pay Mr.

Hoffman his 2007 and 2008 bonus in respect of work performed by him while at

LBI."); A2661 [Bankr. Ct. Op. 77]; A2686 [D. Ct. Op. 6]; A2692 [D. Ct. Op. 12].)

In addition, the lower courts found "that Mr. Hoffman sought $83 million from his

post-LBI employer in order to be made whole for his lost LBI bonuses and to

balance his personal balance sheet, and Barclays gave it to him." (A2647 [Bankr.

Ct. Op. 63]; *see* A2692 [D. Ct. Op. 12]); *see also* Corbin on Contracts § 70.6

(2016) ("A performance rendered by the third person that is bargained for and

received by the claimant in satisfaction of the claim operates as a discharge of the

debtor."). To the extent that either Appellant is arguing that—despite the well-

supported findings by both lower courts that Barclays paid their LBI bonuses—

they harbored an intent that they could nonetheless seek payment again by LBI,

that intent is contrary to law and irrelevant.

Finally, Appellants' reliance on a 1973 California intermediate appellate

court decision and a 1956 New Jersey decision is also misplaced. (Hoffman Br.

31-33; Judkins Br. 15-17.) Those cases dealt with situations where, unlike here,

32

employees asserted claims for one or two weeks of severance compensation owed by their previous employer that their new employer had neither paid nor agreed to pay. *See Chapin v. Fairchild Camera & Instr. Corp.*, 107 Cal. Rptr. 111, 114-15 (Ct. App. 1973); *Adams v. Jersey Cent. Power & Light Co.*, 21 N.J. 8, 11-13 (1956). Here, of course, the new employer (Barclays) *did* pay the bonuses owed by LBI, so the Appellants are not entitled to collect them again.

### D. Mr. Hoffman and Mr. Judkins' Various Other Arguments for a Double Recovery Are Baseless.

Confronted with an evidentiary record that makes it clear Barclays paid their LBI bonuses, Appellants make a number of arguments, all of which were rejected below, that they say compel the Court to ignore the facts established at trial. None of these arguments justifies the Appellants receiving their LBI bonus again.

### 1. The parol evidence rule does not apply to this case.

Appellants argue that the parol evidence rule bars consideration of any fact outside the four corners of their Barclays employment agreements. (Hoffman Br. 33-35; Judkins Br. 17-19.) This argument is incorrect for several reasons.

First, Appellants cannot invoke the parol evidence rule against the Trustee because neither the Trustee nor LBI was a party to their employment agreements with Barclays. *See*, *eg.*, *Scherer v. Kane*, 284 F. App'x 850, 852-53 (2d Cir. 2008) (parol evidence rule did not bar evidence of oral agreement offered by non-party to the written contract); *SIN, Inc. v. Dep't of Fin. of City of N.Y.*, 513 N.Y.S.2d 430,

434  (App. Div. 1987) ("Generally, the parol evidence rule would be available for use only by one of the parties to this lease against another."), *aff'd*, 523 N.E.2d 811 (1988).  This Court just last year rejected a similar attempt by a party to a contract to invoke the parol evidence rule against a nonparty.  *See Charron v. Sallyport Glob. Holdings, Inc.*, 640 Fed. App'x 80, 83 (2d Cir. 2016) (party's attempt to invoke the parol evidence rule is "misleadingly focuse[d] on the wrong agreement. DC Capital is not a party to this case and Charron was not a party to the DC Capital transaction.").

The cases that Appellants cite involve applying the rule against parties to contracts, not non-parties like the Trustee or LBI.  *See Oxford Commercial Corp. v. Landau*, 190 N.E.2d 230, 230-32 (1963) (precluding a party to the contract at issue from introducing evidence that contradicted the terms of a release in the contract); *Vinciguerra v. New York*, 326 N.Y.S.2d 293, 293-95 (App. Div. 1971) (precluding a party to assignment agreement from introducing evidence of an alleged oral agreement regarding the same transaction).

Second, the parol evidence rule "bars admission of extrinsic evidence to vary or contradict the terms of a fully integrated writing."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008); *see Travelers Cas. & Sur. Co. of Am. v. Trataros Constr., Inc.*, 819 N.Y.S.2d 852 (Sup. Ct. 2006) ("The parol evidence rule pertains to contract terms, not assertions of fact." (internal quotation

34

omitted)).  The Trustee neither disputes nor seeks to vary the terms of Appellants' agreements with Barclays.  The Barclays agreements spell out the amounts that the Appellants were paid, including the payments that matched exactly the bonuses they were owed by LBI.  The so-called "extrinsic evidence" is not inconsistent with the agreements—it simply confirms that these payments were meant to make Appellants whole for their unpaid LBI bonuses.

Third, the parol evidence rule does not prevent a court from "consider[ing] the factual circumstances surrounding the execution of a contract, because the court's primary purpose in interpreting the agreement is to determine the parties' intentions, and interpreting the contract's terms in a factual vacuum would undermine that goal."  *In re Coudert Bros.*, 487 B.R. 375, 393 (S.D.N.Y. 2013); *see Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) ("court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish" (internal quotation omitted)).  Barclays committed in the APA to offer continued employment to LBI's employees, including Appellants, and to pay them bonuses for the work they performed at LBI.  This context cannot be ignored; Barclays' agreements with Appellants cannot be considered in a vacuum but rather must be read in the context of Barclays' commitments in the APA that led to their existence.

35

## 2. The lack of an assumption and assignment of the employment contracts is irrelevant.

Appellants also argue that Barclays did not assume their LBI employment contracts under the APA. (Hoffman Br. 40-44, 55; Judkins Br. 23-25.) This is true, but, as the courts below held, it is also legally irrelevant. (*See* A2634-35 [Bankr. Ct. Op. 50-51]; A2687-88[Dist. Ct. Op. 7-8].)

First, Mr. Hoffman argues that his LBI employment contract was not assumed by Barclays in the APA, which excluded employment-related liabilities apart from those assumed in Section 9. (Hoffman Br. 40-44.) This argument entirely misses the point. In Section 9.1 of the APA, Barclays *did* expressly agree to take on the obligation to make bonus payments to those former LBI employees who (like Mr. Hoffman) chose to join Barclays. (A2124 [APA § 9.1(c)].) The fact that Barclays did not assume his specific employment agreement simply meant that LBI remained liable if Barclays had failed to pay. *See Coreth*, 479 B.R. at 278 n.3 (commitment to pay compensation to former LBI employees was "a promise by Barclays to Lehman rather than the assumption of a Lehman contract"). That does not mean Barclays' promise was "completely optional" or "illusory." (Hoffman Br. 48.) In any event, because the Appellants were fully paid, the lack of an assumption is irrelevant.

Second, Appellants complain that they did not consent to the delegation of LBI's bonus obligation in the APA. (Hoffman Br. 47; Judkins Br. 21.) As the

36

Bankruptcy Court and the District Court held, however, unlike an assignment of a contract that discharges the original obligor's liability, a delegation of a duty of payment does not require the obligee's consent. (A2634-35 [Bankr. Ct. Op. 50-51]; A2689 [D. Ct. Op. 9].) While an obligor cannot "divest himself of the duty and substitute the duty of another" without consent, "most obligations can be delegated as long as performance by the delegate will not vary materially from performance by the delegant." *Contemporary Mission*, 557 F.2d at 924; *see also Beck v. Mfrs. Hanover Trust Co.*, 481 N.Y.S.2d 211, 218 (Sup. Ct. 1984) ("While a delegation of a duty of payment does not necessarily require the obligee's consent, it does not discharge the original obligor.").[13] In this case it was not the delegation that divested LBI of its obligations to the Appellants; it was Barclays' payment of their LBI bonuses.

---

[13]. Appellants misconstrue the nature of a delegation in citing dicta from a footnote in *Viacom International Inc. v. Tandem Products Inc.*, 526 F.2d 593, 596, n.6 (2d Cir. 1975) and section 316 of the Restatement (Second) of Contracts. (Hoffman Br. 47; Judkins Br. 21.) In *Viacom*, the obligee had consented and the court's dictum appears to have been intended to describe the situation there, which involved the type of personal duty (the distribution of a television program) that is excepted from the well-established rule that delegations generally do not require the obligee's consent. 526 F.2d at 595-96. And the portion of the Restatement cited by the Appellants describes an *assignment* of an obligation that discharges the original obligor's liability rather than a delegation. *See* Restatement (Second) of Contracts § 316 (1981) ("A person subject to a duty (the obligor) does not ordinarily have such power to substitute another in his place without the consent of the obligee; *this is what is meant when it is said that duties cannot be assigned*." (emphasis added)).

Equally irrelevant is Appellants' argument that they were not third party beneficiaries of the APA. (Hoffman Br. 48-49; Judkins Br. 21-23.) There is no requirement that a delegation confer third party beneficiary status upon the obligee. *See, e.g.*, Restatement (Second) of Contracts § 318, cmt. B (1981) ("obligee *may in some cases* be an intended beneficiary" of a delegation (emphasis added)); Laura Hunter Dietz et al., 22A N.Y. Jur. Contracts § 475 (2016) ("*At best*, the [delegation] makes the obligee an intended beneficiary under the new arrangement." (emphasis added)). Again, the point here is not whether or not Appellants were third party beneficiaries; it is the fact that the Appellants were actually paid their LBI bonuses.[14]

Finally, Appellants incorrectly claim that the Bankruptcy Code prohibited LBI from delegating its bonus obligations to Barclays without assuming and assigning individual employment contracts pursuant to section 365 of the Bankruptcy Code. (Hoffman Br. 49-51; Judkins Br. 23-25.) Nothing in section 365 or anywhere else in the Bankruptcy Code prohibits such a delegation. The case Mr. Hoffman and Mr. Judkins cite, *In re MPF Holding U.S. LLC*, No. 08-36084, 2013 WL 3197658 (S.D. Tex. Jun. 21, 2013), is not to the contrary as it

---

14. Likewise, Mr. Hoffman's and Mr. Judkins' assertion that they lacked "notice" of the APA is irrelevant because the sale did not purport to "extinguish" or "compromise" their claims. (*See* Hoffman Br. 45-47; Judkins Br. 20.)

merely stands for the uncontroversial proposition that section 365 governs the assignment of executory contracts in bankruptcy.

### 3. Barclays' $83 million bonus payment was not materially different from LBI's $83 million bonus obligation.

Mr. Hoffman also argues that Barclays did not pay him his LBI bonus because of the timing of Barclays' payments. (Hoffman Br. 44-45.)[15] He cites *Contemporary Mission* for the proposition that obligations can only be delegated if "performance by the delegate will not vary materially from performance by the delegant." 557 F.2d at 924. As the *Contemporary Mission* court explained, this means that delegation is barred where, unlike here, a duty is "sufficiently personal." *Id.* at 924 n.11. But there is nothing personal about a duty of payment, as it does not "involve the personal qualities or skills of the obligor." 29 Williston on Contracts § 74:27 (4th ed.) (2015).

### 4. Mr. Hoffman's arguments that LBI did not delegate bonus obligations to Barclays are irrelevant and incorrect.

Mr. Hoffman next misreads the APA in an attempt to show that the APA had nothing to do with Barclays' payment of the $83 million. (Hoffman Br. 43, 52-

---

15. Mr. Hoffman inaccurately states that he "was obligated to be in Active Working Status for Barclays at the time the payments were made," which he claims was a period that lasted "until 2015." (Hoffman Br. 22.) In fact, under Mr. Hoffman's Barclays agreement, he would have received all of his Special Awards and his entire performance bonus if Barclays terminated him without cause. (A2206.) Moreover, the entire $83 million was payable by February 2011. (A2205.)

56.)  These arguments are ultimately irrelevant because, having accepted payment from Barclays, Mr. Hoffman "cannot collect twice to discharge the same obligation" regardless of whether Barclays' payment of the $83 million was consistent with the text of the APA or not.  *Mathias*, 238 F. Supp. 2d at 571-72; *accord* Restatement (Second) of Contracts § 278(2).  Moreover, as discussed below, Mr. Hoffman's reading of the APA is simply wrong.

First, Mr. Hoffman argues that LBI delegated only the obligation to pay discretionary bonuses to employees without employment contracts.  (Hoffman Br. 43.)  Such a limitation appears nowhere in the APA.[16]  Mr. Hoffman's assertion that "[t]here simply was no delegation to Barclays of LBI's contractual compensation obligations" (Hoffman Br. 44) is wrong.  As the Bankruptcy Court found, the delegation of the obligation to pay bonuses to Transferred Employees is plain on the face of the APA.  (A2635 [Bankr. Ct. Op. 51].)  Barclays committed to LBI to pay bonuses to former LBI employees, and it did pay Mr. Hoffman and Mr. Judkins the full amount they were owed.  They are not entitled to more.

_____

16. Mr. Hoffman incorrectly states that the District Court found that "Barclays did not 'expressly' agree in section 9.1(c) of the APA to pay Hoffman's LBI compensation."  (Hoffman Br. 43 (quoting A2703 [D. Ct. Op. 7].)  Such a finding appears nowhere in the District Court's opinion.  Rather, the District Court found that "a formal assumption of Appellants' LBI employment contracts was not required to effect a delegation of the narrow duty to pay LBI's 2008 bonuses; indeed this was *expressly* what LBI and Barclays agreed to do in Section 9.1(c) of the APA."  (A2703 [D. Ct. Op. 7] (emphasis added).)

Second, Mr. Hoffman's assertion that he was not a Transferred Employee under the APA was accurately termed "pure nonsense" by the Bankruptcy Court. (A2639 [Bankr. Ct. Op. 55].)  As the Bankruptcy Court found, Mr. Hoffman's argument that he was not a Transferred Employee because he did not reply to Barclays' mass email offer is baseless, as the APA "does not state that only one specific offer of employment will, if accepted, render an Offeree a Transferred Employee."  (A2639-40 [Bankr. Ct. Op. 55-56].)  The District Court affirmed this finding.  (A2706-7 [D. Ct. Op. 10-11].)  The fact that Mr. Hoffman negotiated with Barclays for a week and a half before signing an employment agreement does not mean that the Bankruptcy Court committed clear error in finding that Mr. Hoffman was already paid.

Finally, Mr. Hoffman makes the irrelevant point that the APA required Barclays to make the bonus payments by March 15, 2009, while Mr. Hoffman agreed to receive $53 million of his $83 million bonus after that date.  (Hoffman Br. 55-56.)  Mr. Hoffman cannot complain about timing that he agreed to with Barclays in order to be paid his entire $83 million bonus.

### 5. The Bankruptcy Court was correct in rejecting Mr. Hoffman's judicial estoppel argument.

The Bankruptcy Court correctly rejected Mr. Hoffman's argument that the court must ignore the evidence that he has already been paid because of positions

41

unsuccessfully taken by a different party in a different proceeding.  (Hoffman Br. 56-59.)[17]

Courts consider three factors in determining whether judicial estoppel applies:  (i) a party's later position must be clearly inconsistent with its earlier position; (ii) the party must have succeeded in persuading a court to accept its earlier position; and (iii) the party seeking to assert an inconsistent position would have to derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *See Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005).  None of the factors is present here.

First, the Bankruptcy Court correctly ruled that Mr. Hoffman cannot show that the Trustee previously took any position that is clearly inconsistent with his position here.  (A2641-44 [Bankr. Ct. Op. 57-60].)  Mr. Hoffman ambiguously attributes the prior statements he relies on to "Lehman," but those statements were made by LBHI.  The Bankruptcy Court explained that, "[a]s has been made clear throughout these cases, LBHI and LBI are separate estates and separate entities and the actions of one cannot automatically be attributed to the other.  Accordingly, the

---

17. Although the Bankruptcy Court's judicial estoppel ruling holds up under any standard of review, abuse of discretion is the proper standard.  The Supreme Court has recognized that "judicial estoppel is an equitable doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations and quotations omitted).

positions taken by LBHI with respect to Barclays' payments to Mr. Hoffman

cannot be attributed to LBI or to the Trustee."  (A2644 [Bankr. Ct. Op. 60].)[18]

Second, the Bankruptcy Court correctly found that "no court has adopted

LBHI's position with respect to the nature of Barclays' payments to Mr.

Hoffman."  (A2645 [Bankr. Ct. Op. 61].)  "[J]udicial estoppel applies only when a

tribunal in a prior separate proceeding has relied on a party's inconsistent factual

representations and rendered a favorable decision."  *Adler v. Pataki*, 185 F.3d 35,

41 n.3 (2d Cir. 1999).  Here, the Bankruptcy Court ruled against LBHI *twice* on its

employee bonus claim.  (A2645 [Bankr. Ct. Op. 61].)  This alone precludes the

application of judicial estoppel.  *See New Hampshire v. Maine*, 532 U.S. 742, 750-

51 (2001) ("Absent success in a prior proceeding, a party's later inconsistent

position introduces no risk of inconsistent court determinations, and thus poses

little threat to judicial integrity."  (internal citations and quotations omitted)).

---

18. For the same reason, there is no merit to Mr. Hoffman's argument that the
statements made by LBHI should be viewed as admissions by the Trustee.
(Hoffman Br. 59-60.)  But even if they were, the Bankruptcy Court took a
"permissible view[] of the evidence" in concluding that Mr. Hoffman was
already paid.  *Cifra*, 252 F.3d at 213; *see also Fitzpatrick v. Am. Int'l Grp., Inc.*,
No. 10 Civ. 142 (MHD), 2013 WL 709048, at *47 (S.D.N.Y. Feb. 26, 2013)
(admission "not conclusive in the face of record evidence suggesting the
contrary").  Mr. Hoffman also argues that former LBI employee Michael
Gelband "admitted" after the sale that Mr. Hoffman was "going to be a creditor
of Lehman."  (Hoffman Br. 13.)  Even if this statement by Mr. Gelband, whose
employment with LBI had already ended, were an admission, there is no
dispute that Mr. Hoffman was a creditor of LBI until he was paid in full by
Barclays.

Mr. Hoffman's argument that Judge Peck adopted LBHI's position by stating in his opinion on the Rule 60(b) motions that "Barclays paid approximately $1.5 billion in bonuses to Transferred Employees" cannot be reconciled with Judge Peck's actual words.  (A2644 [Bankr. Ct. Op. 60, n.268].)  As the Bankruptcy Court observed, "Judge Peck made clear that his statements in the background section of the Rule 60(b) Decision, including the citation to Mr. Exall's testimony with respect to Barclays' payments to Mr. Hoffman, were not adopted by the Court as its findings of fact."  (A2645 [Bankr. Ct. Op. 61].)[19]

Third, judicial estoppel is inappropriate where "nothing [the party] said caused any discernible prejudice to [the opposing party] or amounted to an affront to the integrity" of the court.  *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103, 105 (2d Cir. 2010).  Here, the inequitable result would be to preclude the Trustee from contesting Mr. Hoffman's attempt to claim the $83 million after already receiving the money, at the expense of LBI's creditors, based on LBHI's views in a different and entirely unsuccessful proceeding.

---

19. After Judge Peck issued his opinion on the Rule 60(b) motions, LBHI argued that he had made a finding concerning the amount of Barclays' bonus payments—the same argument Mr. Hoffman now makes.  Judge Peck rejected this argument, explaining that he had made no such finding, but instead merely "assumed" a number consistent with LBHI's position before ruling against LBHI.  *In re Lehman Bros. Holdings Inc.*, 456 B.R. 213,  219 (Bankr. S.D.N.Y. 2011).

## II.  LBI's Written Bonus Policy Precludes Mr. Judkins' Claim for a Discretionary Bonus Based on an Alleged Oral Promise.

"An employee's entitlement to a bonus is governed by the terms of the employer's bonus plan."  *Hall v. United Parcel Serv. of Am., Inc.*, 76 N.Y.2d 27, 36 (1990); *see Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 517 (S.D.N.Y. 2012) ("Courts have repeatedly held that a written policy clearly stating that bonus compensation is discretionary bars breach of contract claims based on oral promises."  (internal quotation omitted)), *aff'd*, 766 F.3d 163 (2d Cir. 2014).

LBI's bonus policy provided that "[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm management."  (A2155.)  As the Bankruptcy Court held, "[t]he clear and unambiguous terms of LBI's bonus policy govern here," and so Mr. Judkins is not entitled to any bonus beyond the $800,000 guaranteed by his LBI contract (which Barclays already paid him).  (A2662 [Bankr. Ct. Op. 78].)

Mr. Judkins argues that the alleged oral promise of a discretionary bonus constituted protected wages under the New York Labor Law.  (Judkins Br. 29-32.)  This is incorrect because "[u]npaid bonuses do not constitute 'wages.'"  *Hunter v. Deutsche Bank AG, N.Y. Branch*, 866 N.Y.S.2d 670, 671 (App. Div. 2008).  Moreover, a "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages."  *Tierney v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700 (App. Div. 1993).  Because Mr.

45

Judkins had no contractual right to a bonus in excess of his $800,000 guarantee,

the Bankruptcy Court properly disallowed his claim for such a bonus.

## **CONCLUSION**

The decision of the District Court disallowing Appellants' claims was

correct, and it should be affirmed.

Dated:  New York, New York
        February 3, 2017

HUGHES HUBBARD & REED LLP

By:  /s/ James C. Fitzpatrick
James C. Fitzpatrick
James B. Kobak, Jr.
Gregory C. Farrell
Karen M. Chau
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  james.fitzpatrick@hugheshubbard.com

*Attorneys for James W. Giddens, as trustee for*
*the SIPA liquidation of Lehman Brothers Inc.*

## <u>Certificate of Compliance</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,524 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  New York, New York
       February 3, 2017

HUGHES HUBBARD & REED LLP

By:  /s/ James C. Fitzpatrick
James C. Fitzpatrick
James B. Kobak, Jr.
Gregory C. Farrell
Karen M. Chau
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  james.fitzpatrick@hugheshubbard.com

*Attorneys for James W. Giddens, as trustee for
the SIPA liquidation of Lehman Brothers Inc.*